IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

-oOo-

THE UNITED STATES OF AMERICA, )
Plaintiff, ) Case No. 3:13-CR-00433-10-JAG
-vs- )
CARLOS RIVERA-VELAZQUEZ, )
Defendant. )
______________________________)

TRANSCRIPT OF SENTENCING HEARING
HELD BEFORE THE HONORABLE JAY A. GARCIA-GREGORY
CLEMENTE RUIZ-NAZARIO U.S. COURTHOUSE, HATO REY, PUERTO RICO
TUESDAY, MARCH 29, 2016

---

A P P E A R A N C E S

For the United States of America:

Assistant U.S. Attorney Alberto R. Lopez-Rocafort

For the Defendant:

Attorney Frank D. Inserni-Milam

(Proceedings commenced at 4:57 pm.)

-oOo-

THE CLERK: United States of America versus Carlos Rivera-Velazquez, Case Number 13-433, sentencing hearing. For the Government, Assistant U.S. Attorney Alberto Lopez, and for defendant, Attorney Frank Inserni. The defendant will be assisted by the certified court interpreter.

MR. LOPEZ-ROCAFORT: Good afternoon, Your Honor. The United States is ready.

MR. INSERNI-MILAM: Good afternoon, Your Honor. Frank Inserni, for the record, by appointment of the Court. We're ready to proceed for a sentence.

THE COURT: Okay. If defendant feels pain in his back, you know, he can sit down. Okay?

THE DEFENDANT: No.

THE COURT: Okay. Have you explained to the defendant the presentence investigation report; you're satisfied he understands all of the contents?

MR. INSERNI-MILAM: Your Honor, I met with Mr. Rivera-Velazquez yesterday. We went over the amended PSR report. There is two reports: There's the original one and the amended one.

And we went over both. We went over my corrections and/or comments to both. And I understand he understands it. And, as a matter of fact, I filed a supplement last night, Your

Honor.

THE COURT: Oh, you did.

MR. INSERNI-MILAM: A supplementary to my --

THE COURT: I have your presentence memo of Sunday, the 27th.

MR. INSERNI-MILAM: Last night, I filed a supplementary --

THE COURT: So you filed one last night, March 28th.

MR. INSERNI-MILAM: Very brief. Yes, sir. Very brief.

THE COURT: Very brief.

Well, can I have that, please?

THE CLERK: Yes, Your Honor.

THE COURT: So I can examine it briefly.

MR. INSERNI-MILAM: I apologize for not having emailed it directly to the probation officer, which I usually do. I just thought, by having it filed in the CMF, all of the parties would have it. I don't want to delay the Court's business or work here but --

THE COURT: No. That's fine. Remember that I have a standing order saying that, you know, sentencing memos have been filed 10 days before the sentencing hearing.

MR. INSERNI-MILAM: So, Your Honor, in light of that --

THE COURT: Precisely so I can imbibe everything in

there, and I can make a just decision.

MR. INSERNI-MILAM: Your Honor, I've been going to MDC to make sure that Mr. Rivera was aware of it. Every time I went, there was something new, so I would hopefully bring it to the Court's attention, and to the parties.

THE COURT: Oh, thank God.

Okay. Okay. While we are here, you know, it says here that he has this problem, you know, with a herniated disc. I mean, if you want me to make a designation to a hospital facility or --

MR. INSERNI-MILAM: No. I already spoke with him. He explained to me that he was given the option to go to surgery, but it was not urgent. He'd rather not go through surgery. He would rather wait to see if it improves.

THE COURT: They have an excellent facility in Minnesota, you know, where they have the Mayo Clinic, you know, and the Rochester people, tending to the inmates.

MR. INSERNI-MILAM: Your Honor, I would appreciate you recommending any medical, for a follow-up medical examination of his condition, but he --

THE COURT: I will do that.

MR. INSERNI-MILAM: Please.

THE COURT: Okay. But then, what would the designation be? You know, like Florida or --

MR. INSERNI-MILAM: He was asking if --

THE COURT: I think he has someone in the states, no?

MR. INSERNI-MILAM: Pensacola, Louisiana and Mississippi.

THE COURT: In that order?

MR. INSERNI-MILAM: In that order, right.

THE COURT: Pensacola --

MR. INSERNI-MILAM: Louisiana and Mississippi.

THE COURT: The last one would be Mississippi. And then, he has problems with alcohol, so I will also recommend something with respect to that, and any other educational or vocational training, you know, that will keep him busy.

Okay. How -- I'm not going to take into account what's going on in the local courts. Okay?

MR. INSERNI-MILAM: Fine.

THE COURT: When the time comes, you know, either you or someone else will have to deal with that.

MR. INSERNI-MILAM: Right. Right. Perfect.

THE COURT: Okay. Now, the government, you stand by the plea?

MR. LOPEZ-ROCAFORT: Yes, Your Honor. We stand by the plea.

I just wanted to express to the Court that in, in, in this case, Your Honor, the parties has been negotiating for a while. We took into consideration, as part of the negotiation, as part of the plea, we took into consideration the conspiracy

charge, the defendant's characteristics as contained in the PSR and, most important, obviously, defendant's role in the offense.

And considering defendant's role in the offense, as a supplier for marijuana, we, we agreed to a plea as, in which both parties are requesting the Court to sentence the defendant to 84 months of imprisonment, Your Honor. And we, obviously we stand by it, and we recommend to the Court that, to sentence the defendant to 84 months of imprisonment.

THE COURT: Okay. That was what, you know, the sentence recommendation.

MR. LOPEZ-ROCAFORT: That is correct, as to both parties, Your Honor.

MR. INSERNI-MILAM: That's correct, Your Honor.

THE COURT: Very well.

Okay. And anything else before I hear defendant out?

MR. INSERNI-MILAM: I think Mr. Lopez hit on what I wanted to clarify, which is at footnote one of the amended PSI. The footnote one, basically, is something that the probation officer very clearly added after I filed my memo.

But, as Mr. Lopez said, the role of my client in this case was as a marijuana supplier. He was not -- and, Your Honor, I made the distinction, and Mr. Lopez can correct me if I'm wrong, but the U.S. Attorney's Office, they have a rule or a custom or a form of calculating a, plea agreements, when

drugs are involved, based on a certain drug, which is cocaine. But that does not necessarily mean that the defendant was dealing in cocaine.

And that's what I wanted to make the Court aware of. He is charged, and the evidence is, that he supplied marijuana. Okay? Not cocaine. But Mr. Lopez can correct me, the calculations of the guidelines are based on cocaine, and I just want to clarify that.

So I want Your Honor to know that my client did not deal with cocaine. He's not a drug-user. He's always negative. But he has an alcohol problem, and that's why I asked the Court to recommend treatment for both, just for his benefit, for both, for drugs and alcohol.

MR. LOPEZ-ROCAFORT: Counsel is right in terms that the defendant, the evidence of the government against the defendant, and what the defendant accepted in the plea, in terms of his role, was that he was a marijuana supplier for the organization. That doesn't mean that the defendant, due to foreseeability, is responsible for other drugs that are sold at the drug point, because you have a drug point that sells --

MR. INSERNI-MILAM: Everything.

MR. LOPEZ-ROCAFORT: -- everything: cocaine marijuana, heroin, crack cocaine.

So, in that sense, in these cases, Your Honor, we obviously get to stipulations, get to stipulations with the

defendant as to a specific drug, in this case, cocaine, because we understand that he's still responsible for, for the other drugs that are sold there. However, in terms of his role, in terms what the evidence is as to him is that he was a supplier for marijuana, and that is clarified in the statement of facts.

THE COURT: It should be -- yeah. It should be clear, you know, from the presentence investigation report. Okay? Very well.

MR. INSERNI-MILAM: Thank you.

That's, basically, my concern, Your Honor, with the PSI.

THE COURT: Okay.

MR. INSERNI-MILAM: The recommendations --

MR. LOPEZ-ROCAFORT: Just to be clear, the acceptance, the stipulation was as to cocaine, and the numbers that we reached in the plea agreement is within a stipulation as to cocaine. However, we obviously, we agree that the evidence is that he was a supplier of marijuana.

THE COURT: Okay. Well, it was still a sufficient quantity, you know, in order for him to be charged with possession with intent to distribute.

MR. LOPEZ-ROCAFORT: That is correct, Your Honor.

THE COURT: You know, and both are controlled substances.

MR. INSERNI-MILAM: Right.

MR. LOPEZ-ROCAFORT: That is correct.

THE COURT: Very well.

Okay. So would defendant like to address the Court before I proceed to sentence?

THE DEFENDANT: Yes.

THE COURT: It's your right to do so. Okay?

THE DEFENDANT: In the plea that I signed, I got two points for weapons. In the accusations of the indictment, I don't appear to having been charged with weapons.

In the discovery, there is no audio, video or photos alluding to weapons. In the statement of the witness, on page 13 of the indictment, there is no mention either of a weapon.

And which, on November 30th, when I pled guilty, the magistrate suspended the hearing for half an hour. She suspended the hearing because she found no reason for those two points for the weapon.

That is all.

THE COURT: Okay.

MR. LOPEZ-ROCAFORT: Your Honor, we want to clarify that.

THE COURT: Would you clarify that, please?

MR. LOPEZ-ROCAFORT: Yes, Your Honor.

This is -- I don't know -- the defendant is right, he's not charged with the firearm count. That doesn't mean that the government doesn't have evidence as to the defendant

with firearms.

We have testimonial evidence of the defendant carrying firearms. And, besides that, we have an arrest, at the state level, by the Police of Puerto Rico, actually, in that case. That case appeared in the presentence report, where the defendant was arrested with 200 baggies of marijuana and a Glock 26.

That's why, during the negotiation process, we agreed with counsel to add the two points, because obviously there was going to be evidence of firearms as to this defendant, and the two-points enhancement was going to be made by probation, Your Honor. That case, actually, the defendant still have an arrest warrant pending.

THE COURT: I see here. Yes.

MR. LOPEZ-ROCAFORT: So it is not correct that --

THE COURT: It was administratively closed.

MR. LOPEZ-ROCAFORT: Yes. It can be open at any time, Your Honor, because the defendant actually still a fugitive in that case.

MR. INSERNI-MILAM: Your Honor, I differ as to being a fugitive. The state authorities, the district attorney for Caguas, they know that he's -- they've known all along, since July, that he's been sitting in MDC Guaynabo.

And, as I said in my supplement, there has been no habeas corpus proceedings. There has been no requests. It's

been closed administratively, which is correct, which is what Mr. Lopez told you.

But that doesn't mean that he's a fugitive. Being a fugitive means he's absconding.

MR. LOPEZ-ROCAFORT: He's declared a fugitive, Your Honor.

MR. INSERNI-MILAM: Well, yeah. But then, it's been -- what is it? The (speaking in a non-English language), it's a complaint, has been administratively --

THE COURT: But it says here that there is an order for his arrest because, for nonappearance, with a $200,000 bond.

MR. INSERNI-MILAM: Your Honor, right. But that is the state case, as Your Honor said, is administratively dismissed -- not dismissed, (speaking in a non-English language).

THE COURT: Yeah. It has been put on hold. Let's put it that way.

MR. INSERNI-MILAM: Put on hold. Exactly. Exactly.

THE COURT: Pending whatever may happen, and it may never revive, depending on what the Government of Puerto Rico would like to do with defendant. Okay?

MR. INSERNI-MILAM: Exactly, Your Honor.

But my point is, which is my point with acquitted conduct, and I will make this point to the Supreme Court, if I

had to, basically, what it says in a complaint by police officer is not evidence. That's my point.

In other words, I don't think Your Honor should give much weight to a police complaint that is administratively pending in order to declare this gentleman dangerous or declare him as guilty of a firearm. I don't think Your Honor -- I'm not saying you're going to do that.

THE COURT: You're not saying he's guilty. I mean, it was taken into account with respect to the plea agreement, but that doesn't mean that he's being charged or he's being found guilty of a firearm.

As a matter of fact, you know, when I recommend that he be given some assistance, you know, for his alcohol problem or, you know, even though he has tested negative for substance abuse, if it had been a firearm, you know, perhaps he would not be given that counseling. Okay?

MR. INSERNI-MILAM: Right.

THE COURT: But I'm not going to do that, you know. He's not being charged with the firearm, and the government has made that very clear.

MR. LOPEZ-ROCAFORT: My point is, my point is, that that is the basis, not solely the case. The case is corroboration of the testimony of the witnesses, but that is the basis for the two-point enhancement, of the firearm enhancement.

Enhancement that defendant is saying that he's not responsible now, nonetheless, it was initialed by him during the change of plea hearing when we added the line of the possession of firearms. So I just want to clarify the record that the defendant admitted as to that, and it's part of the evidence.

It was not admission made in a vacuum. It was negotiated with counsel.

MR. INSERNI-MILAM: That's true.

THE COURT: This is not a conviction for firearms.

MR. INSERNI-MILAM: Exactly.

MR. LOPEZ-ROCAFORT: No. Of course not.

THE COURT: And the Court not once said, to make it very clear on the record, this is not a conviction.

MR. LOPEZ-ROCAFORT: It is not a conviction, Your Honor.

THE COURT: It will not be counted as a conviction for firearms in any future proceeding.

MR. LOPEZ-ROCAFORT: And, again, he's not charged with a firearm count here.

THE COURT: So I already made that finding on the record. Okay?

THE DEFENDANT: I did not admit it. I felt the coercion, since they didn't give me anymore options.

THE COURT: That's your view of the matter.

MR. INSERNI-MILAM: Your Honor, I just wanted to -- basically, my point, I should have simplified it, is that, which I think Your Honor understood, the fact that in 2010 there was a police officer who swore a complaint, it's 2010, and we are -- today is what? March 29, 2016.

And he has not been, ever since he was arrested in July of last year by the federal authorities in Aguadilla, he has not been searched or looked upon or arrested or habeas-corpus arrested by the district attorney of Caguas, means something.

THE COURT: I think that has been made quite clear already, so the record is clear on that.

MR. INSERNI-MILAM: Perfect. Thank you.

THE COURT: And this is not a conviction for firearms.

MR. INSERNI-MILAM: Perfect.

THE COURT: Okay. Very well.

Okay. On November 30, 2015, the defendant, Carlos Javier Rivera-Velazquez, pled guilty to Count One of the Indictment in Criminal Case Number 13-433, charging a violation of Title 21, U.S. Code, Section 841(a)(1), 846, 860, which is a Class B felony.

Now, the November 1, 2015, edition of the United States Sentencing Guidelines has been used to apply the advisory guideline adjustments, pursuant to the provisions of

Guideline Section 1B1.11(a).

The guideline for 21, U.S. Code, Section 841(a)(1) offenses is found in U.S. Sentencing Guideline Section 2D1.1 of the guidelines. Now, that section provides that an offense involving at least 3.5, but less than five, kilograms of cocaine has a base offense level of 28, as per U.S. Sentencing Guideline Section 2D1.1(c)(6).

Since the present offense took place within 1,000 feet of a protected location, a one-level enhancement is warranted, pursuant to U.S. Sentencing Guideline Section 2D1.2(a)(2). Since defendant possessed a firearm during the conspiracy, there is a two-level increase -- this level is increased two levels, pursuant to 2D1.1(b)(1), making it clear that this is not a conviction for firearms.

Since the defendant has demonstrated acceptance of responsibility for his participation in the offense, the offense level is reduced by three levels, pursuant to Guideline Section 3E1.1(a) and (b). There are no other applicable guideline adjustments.

Now, based on a total offense level of 28 and a criminal history category of I, guideline imprisonment range is from 78 to 97 months, with a fine range of 12,500 to $10 million, a supervised release of at least eight years.

The Court has reviewed the Advisory Guideline Calculations, finds that the presentence investigation report

has adequately applied those computations. The computations satisfactorily reflect the components of the offense by considering its nature and circumstances. Furthermore, the Court has considered the other sentencing factors set forth in Title 18, U.S. Code, 3553(a).

Mr. Rivera-Velazquez is 34 years old. He's a U.S. citizen, resident of Caguas. He has five dependents.

MR. INSERNI-MILAM: I'm sorry, Your Honor. He's 35, yesterday.

THE COURT: Oh, yeah, March 28th. That's true. Okay. Okay. Very well. He's 35 years old.

Defendant has completed GED exams and was unemployed at the moment of the arrest. He suffers from hypertension and hyperlipidemia.

MR. INSERNI-MILAM: I'm sorry to interrupt. That is not correct.

He suffers from high blood pressure, which is, as a matter of fact, the first docket entry in this case by judge, by the Magistrate McGiverin, was a notice to MDC that he suffered from high blood pressure. He doesn't suffer from --

THE COURT: The other one. Well, okay. So he suffers from high blood pressure, and recently, you know, he has been diagnosed with a herniated disc.

MR. INSERNI-MILAM: Exactly.

THE COURT: Okay?

There is no known history of emotional/psychological problems within his background. He has no self-reported history of substance abuse. However, he has reported excessive alcohol consumption, for which the Court would like for the Bureau of Prisons to give him some help.

This is Mr. Rivera-Velazquez's second known arrest and first conviction. He holds a prior arrest at the state level for violation of the Puerto Rico Controlled Substances Law and Puerto Rico Weapons Law, which has been administratively closed as of this time.

The Court has taken into consideration the elements of the offense and Mr. Rivera-Velazquez's participation as a supplier, for the drug-trafficking organization, of marijuana.

THE PROBATION OFFICER: For the record, U.S. Probation Officer Alexandra Nazario.

Actually, lipidemia is high cholesterol, and he indicated that during the formal interview.

THE COURT: So we stand corrected.

MR. INSERNI-MILAM: Sorry, Your Honor. Thank you. We learned a new term today. I apologize, Your Honor.

THE COURT: So, Counsel, please, you're not within the body of defendant. Okay?

MR. INSERNI-MILAM: The term.

THE COURT: So, okay. It's high cholesterol levels,

okay, which have to be treated by the Bureau of Prisons. Okay? Very well.

And then, the Court has taken into consideration the elements of the offense, Mr. Rivera's participation, as I have indicated, as a supplier of marijuana for the drug-trafficking organization. The Court has also taken into consideration the Title 18, 3553, factors, again, elements of the offense, the plea agreement that the parties have reached, the need to promote respect for the law and protect the public from further crimes by defendant, as well as the issues of deterrence and punishment.

He has also taken into consideration what counsel has brought to the attention of the Court by way of sentencing memorandum, together with the supplement, concerning defendant's personal history and characteristics. Okay?

And so the Court will give the defendant a sentence at this time, this being a Type-B plea, at the low end of the guideline range. Okay?

So it is the judgment of this Court that the defendant will be committed to the custody of the Bureau of Prisons to be in prison for a term of 78 months. Okay? That is the low end of the guideline.

I have taken into consideration what you have indicated concerning defendant's personal history and characteristics. So I have exercised my discretion in that

regard. Okay?

Also, defendant will be designated, if at all possible, to a suitable institution. His first choice would be Pensacola, in the State of Florida. And then, if that is not possible, Louisiana and, finally, Mississippi. I believe he has relatives -- where?

THE DEFENDANT: In New York.

THE COURT: -- in New York. Well, at least, you know, from here to Puerto Rico -- to Miami, they could go and visit him. Okay?

MR. INSERNI-MILAM: Perfect.

THE COURT: It's very important, you know, for full and complete rehabilitation.

Also, the Court would like for this defendant to be given, you know, a medical evaluation and be treated, you know, at least, you know, for the pain that comes with the herniated disc, okay, as well as any medication that will be necessary for his hypertension and cholesterol levels, and, also, that he be given, you know, any help that may be necessary, you know, concerning his alcohol addiction. Plus, you know, any educational and vocational training that would be available, you know, within the institution so he will be equipped to make an honest living when he comes out on supervised release.

Upon release from confinement, defendant shall be placed on supervised release for a term of eight years, under

the following terms and conditions:

He shall not commit another federal, state or local crime and shall observe the standard conditions of supervised release recommended by the U.S. Sentencing Commission and adopted by this Court.

He shall not unlawfully possess a controlled substance and refrain from possessing firearms, destructive devices and other dangerous weapons.

He shall refrain from the unlawful use of controlled substances, submit to a drug test within 15 days of release. Thereafter, submit to random drug-testing, not less than three samples during the supervision period, and not to exceed 104 samples per year, in accordance with the Drug Aftercare Program Policy of the U.S. Probation Office, approved by this Court.

If any such samples detect substance abuse, defendant shall participate in an inpatient or outpatient substance abuse treatment program for evaluation and/or treatment, as arranged by the U.S. Probation Officer, until duly discharged. Defendant is required to contribute to the cost of services rendered (co-payment) in an amount arranged by the probation officer, based on the availability to pay or availability of third-party payment.

He shall participate in a program or course of study aimed at improving educational level and/or complete a vocational training program. In the alternative, he shall

participate in a job placement program recommended by the probation officer.

Defendant shall provide the probation officer access to any financial information upon request. He shall submit to a search of his person, property, house, residence, vehicle, papers, computers, other electronic communication or data storage devices or media, and effects (as defined in 18, U.S. Code, Section 1030(e)(1), to search at anytime, with or without a warrant, by the probation officer, and if necessary, with the assistance of any other law enforcement officer (in the lawful discharge of the supervision functions of the probation officer) with reasonable suspicion concerning unlawful conduct or a violation of a condition of probation or supervised release.

The probation officer shall seize any electronic device, which will be subject to further forensic investigation/analyses. Failure to submit to such a search and seizure may be grounds for revocation. Defendant shall warn any other residents or occupants that their premises may be subject to search, pursuant to this condition.

Defendant shall assist in the collection of a DNA sample, as directed by the probation officer, pursuant to the Revised DNA Collections Requirements, and Title 18, U.S. Code.

Having considered Mr. Rivera-Velazquez's financial condition, a fine will not be imposed at this time. And so,

but the special monetary assessment in the amount of $100 must be imposed, as required by law.

Now, in your plea agreement, you have waived your right to appeal, provided I sentence you in accordance with the plea agreement, which I have done so. Therefore, if you should file a notice of appeal, most likely, the Court of Appeals will enforce that waiver.

However, if you still wish to file a notice of appeal, it has to be filed within 14 days of judgment being entered in your case. And if you're unable to pay the cost of an appeal, you may apply for leave to appeal in forma pauperis. And if you so request, the Clerk of the Court will prepare and file a notice of appeal on your behalf.

Mr. Rivera, you know, I have taken into account some of your good deeds, you know, that were relayed to me by counsel, concerning your personal history and characteristics. I think this should be it for you. You know, it simply doesn't pay, you know, to be here being sentenced, you know, spending time in prison, when you can be enjoying your family, you know, and those people.

So put your heart and soul, you know, in whatever programs may be available for you, you know, and zero in on your family in the future. You know, forget about anything that has to do with a controlled substance in the future, you know.

They're objects. They're not as important as you, as a human being. Okay? You have a dignity of your own, you know, and you're much more than that. And you can give much more than that, especially to your family members, as well as to society in general. So I hope everything works out for while you're in prison. Okay?

Anything else?

MR. INSERNI-MILAM: Nothing else. Thank you for those words, Your Honor.

THE COURT: Very well.

MR. INSERNI-MILAM: Permission to leave the courtroom.

THE COURT: Okay.

MR. INSERNI-MILAM: Thank you. Have a good afternoon.

MR. LOPEZ-ROCAFORT: Your Honor, we move for dismissal of the remaining counts.

THE COURT: So all remaining counts, according to the request of the government, are hereby dismissed.

MR. LOPEZ-ROCAFORT: Thank you, Your Honor.

THE COURT: Okay. Very well.

(Proceedings concluded at 5:24 p.m.)

-oOo-

UNITED STATES DISTRICT COURT )
) ss.
DISTRICT OF PUERTO RICO )

**REPORTER'S CERTIFICATE**

I, CINDY LEE BROWN, do hereby certify that the above and foregoing, consisting of the preceding 23 pages, constitutes a true and accurate transcription of my stenographic notes and is a full, true and complete transcript of the proceedings to the best of my ability.

Dated this 1st day of May, 2016.

/s/ Cindy Lee Brown
______________________________
CINDY LEE BROWN, Federal
Official Court Reporter
150 Carlos Chardon, Room 150
San Juan, PR 00918
(787) 772-3478